The People *vs.* John Sheahan.    *Receiving stolen goods,*
*knowing they were stolen.*

The "Act
to prevent ser   JOHN SHEAHAN was charged in an indictment for re-
vants embez- ceiving stolen goods, knowing they were stolen. He was
zlingtheirmas
ters' goods," arraigned for this offence, and plead not guilty.
Rev. L. vol. 1.     John Griffin, an apprentice to Mr. Brown, Soap and
p.413, extends
to cases only Tallow Chandler, testified that he sold to the prisoner one
where the ser-
vant or ap- box of tallow candles, the property of Isaac and David I.
prentice has Brown.
the custody of
the goods.

It appeared the prisoner had a cellar in the neighbor- NEW-YORK, hood of the Messrs. Brown's factory, in which he sold or- March 1823. anges, &c., that Griffin had often stopped into the store in The People the morning, as he was going to the factory, that the pris- *vs.* oner had told him several times to bring him a box of John Sheahan candles. He finally brought him the box of candles charg- ed in the indictment, for which he was to receive 4d per ☖ lb., but had never asked for, or received any thing.

In consequence of information received at the Police Office, a search-warrant was issued, and the premises of the prisoner searched. A great variety of articles were found, and among others, the box of candles, secreted un- der the bed. Upon inquiring of the prisoner how and when they came there, he said he had purchased them of Mr. Brown. The officer went to the factory, and upon in- quiring, was told that they had not sold him the box of candles, or any person from their store. Mr. Isaac Brown returned with the officer to the cellar occupied by Sheahan and upon examining the candles, found they were his prop- erty. Griffin denied he had brought them there, but in a short time confessed he had, and that they were brought by the direction of the prisoner; and Sheahan finally con- fessed he had received them from the boy.

*Sampson* and *D. Graham*, for the prisoner, called a number of witnesses who testified that the prisoner was a man of good character.

They also raised several points of law in his favor.

*Sampson* read the "act to prevent servants embezzling their masters' goods, Rev. L. vol. 1. p. 413., wherein it is enacted, that servants embezzling their masters' goods and chattels to a certain value, with intent to steal them, are guilty of felony. But there is a proviso in the act which says. "But this act shall not extend to any appren-

NEW-YORK, "tice, nor to any person within the age of eighteen years,
March 1823. "going away with the monies, goods, chattels, or bills of
The People "exchange, bonds, orders, warrants, bills or promissory
    *vs.* "notes for payment of money, or any public securities is-
John Sheahan
———————— "sued or to be issued by authority of the United States,
"or of this State, for payment of money, of his or her mas-
"ter or mistress, or otherwise converting the same to his
"or her own use during the time of his or her apprentice-
"ship, or being within the age of eighteen years."   .

*Sampson* contended, that under the above statute, the
offence committed by Griffin was not a felony.   It was
merely a breach of trust; for the act would be nugatory if
apprentices could be prosecuted for a felony when the act
was explicit—when there was an express proviso that it
should not extend to apprentices under eighteen years of
age.

He argued, that as this was not a felony in Griffin, but
a mere fraud—a breach of trust—as they were not stolen
by him, they could not be received by Sheahan, knowing
they were stolen—if there was no larceny of the goods,
it would be impossible they could be received, knowing
they were stolen.   He contended that this act was in fa-
vor of apprentices.

*Maxwell* replied that the act extended to cases only
where the apprentice had charge of the goods, in the lan-
guage of the act, "That if any servant, to whom any mon-
"ey, goods, chattels, or bills of exchange, bonds, orders,
"warrants, bills or promissory notes for payment of money,
"or any public securities issued or to be issued by authori-
"ty of the United States, or of this State, for payment of
"money, heretofore have been, or hereafter shall be, by his
"or her master or mistress, delivered to be safely kept," &c.
He contended that the act extended to cases where the

.goods had been delivered to be safely kept, and not to cases where the original taking was wrongful, that such a construction was not only within the spirit of the act, but was also within the express letter of the law, that a contrary construction would be full of the most dangerous consequences to society; it would let loose one part of the community to prey upon the property of another: that the act should be construed strictly, not only for the security of the master, but also for the benefit of the apprentice.

NEW-YORK, March, 1823.

The People
vs.
John Sheahan

The Court intimated that they took the law to be as stated by the District Attorney; but observed the prisoner should have the benefit of the objection raised by his counsel in arrest of judgment, or on a motion for a new trial.

The trial proceeded, and *D. Graham* raised another objection.

He contended, that in petit larceny, all were principals —there could be no accessaries either before or after the fact; and that the defendant therefore could not be convicted as a receiver: that the evidence before the Court was, that the defendant counselled the boy to take the box of candles; in accordance with his counsel and direction, he did bring it. It was a petit larceny in both, and the defendant is guilty as principal, and not as receiver.

In petit larceny all are principals.
To counsel an apprentice to steal a box of candles of his master, & he does steal them, is felony in both.

The jury was directed to pass upon the prisoner upon the evidence before them; the objection being saved to be considered by the Court.

The jury immediately delivered in a verdict of guilty, against the defendant.

The Court subsequently decided the objection good.